UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

EBERAIA D. FIELDS,

        Plaintiff,

v.                                         CAUSE NO. 3:20cv118 DRL

JASON ROZZI *et al.*,

        Defendants.

## OPINION AND ORDER

Law enforcement arrested Eberaia Fields for operating a vehicle while intoxicated and for resisting. He alleges that officers violated his constitutional rights. At the scene of his arrest, he says Officer Jason Rozzi and Officer Bryce Hall used excessive force.[1] At the Cass County Jail, he alleges Officer Rozzi used excessive force and Officer Hall and Sergeant Daniel Frye failed to intervene in the use of excessive force by Officer Rozzi and other officers. He also asserts a state law defamation claim. The defendants—Officer Rozzi, Officer Hall, and Sergeant Frye—request summary judgment. The court grants the motion.

## BACKGROUND

On February 1, 2018, Officer Rozzi and Officer Hall responded to a dispatch report of a suspicious man in a vehicle approaching children near an apartment complex in Logansport, Indiana. Officer Rozzi stopped a vehicle driven by Eberaia Fields. Shortly thereafter, Officer Hall arrived on scene and joined Officer Rozzi at the vehicle.

As Officer Rozzi and Mr. Fields conversed, Officer Rozzi noticed an open beer can and the smell of alcohol, and that Mr. Fields' speech was slurred and his eyes were glassy. Officer Rozzi ordered Mr. Fields to step out of the vehicle. Mr. Fields complied. While Mr. Fields exited, Officer

---

[1] Mr. Fields abandons his failure to intervene theory against Officer Hall for his conduct at the scene.

Rozzi additionally noticed an odor of marijuana, that Mr. Fields was a large man (approximately 6'5" weighing 230 pounds), and that Mr. Fields was moving slowly and unsteadily.

Mr. Fields began asking why his vehicle was stopped. Officer Rozzi conducted a search of Mr. Fields and found marijuana in his pocket. Mr. Fields then began asking why he was being searched. Officer Rozzi contends handcuffs were placed on Mr. Fields at this point. Officer Rozzi asked him about the open container of alcohol and marijuana, and Mr. Fields began to shout.

Officers Rozzi and Hall contend that, after Mr. Fields was placed into handcuffs, Officer Rozzi began escorting Mr. Fields to Officer Rozzi's patrol vehicle. Officer Hall remained at Mr. Fields' vehicle (over 50 yards away by their account). Mr. Fields disputes the distance between the two vehicles. At this point, Mr. Fields jerked away from Officer Rozzi and shouted, "I'm not going anywhere." By Officer Rozzi's account, he pulled Mr. Fields to the ground to gain control of him. Officer Hall remained at Mr. Fields' vehicle. Officer Hall heard a short struggle; and, when he looked up, he saw Officer Rozzi and Mr. Fields on the ground.

Mr. Fields' story is different. Mr. Fields contends he was tripped to the ground by Officer Rozzi immediately after being searched. He disputes any resistance. He says Officer Hall was not at Mr. Fields' vehicle 50 yards away but rather partook in the use of force by putting his knee into Mr. Fields' back. Mr. Fields says he was then placed in handcuffs.

Officer Rozzi and Mr. Fields subsequently stood up and walked to the patrol vehicle without further incident. Once at the patrol vehicle, Officer Rozzi asked if Mr. Fields would take field sobriety tests. Mr. Fields declined. Officer Rozzi placed Mr. Fields in his patrol vehicle and drove to the Cass County Jail. During this trip, Mr. Fields continued to ask why he was being arrested. He yelled and cursed at Officer Rozzi. By Mr. Fields' account, he became very angry.

Once Mr. Fields arrived at the Cass County Jail, he remained angry and continued to ask why he was being arrested. Officer Hall read him the implied consent information and offered a chemical

test. Mr. Fields refused. The jail staff determined that Mr. Fields should be placed in a padded cell. He was escorted to a padded cell and asked to remove his clothes, and he complied. He was eventually given clothes to wear.

While in the padded cell, Mr. Fields contends he heard Officer Rozzi, Officer Hall, Sergeant Frye, and others talking. He says Officer Rozzi remarked that Mr. Fields was out looking for little boys and that Officer Hall and Sergeant Frye called him a child molester.

Officer Rozzi obtained a search warrant to have Mr. Fields' blood drawn, which required Mr. Fields' transportation to the hospital. Officer Rozzi and three other officers entered the padded cell to escort Mr. Fields to the hospital.[2] Mr. Fields was sitting on the ground when the search warrant was read to him. Mr. Fields refused to stand up or allow officers to place handcuffs on him.

Officer Rozzi and another officer used force to put Mr. Fields on his stomach. Mr. Fields resisted at the start. Officer Rozzi was on top of Mr. Fields and applied pressure to Mr. Fields' back with his knee. During this approximately two-minute incident, the four officers were holding Mr. Fields down. They put leg shackles on him but had yet to put handcuffs on him when an officer pulled down Mr. Fields' pants and used a TASER device on his lower back or upper buttocks. The defendants contend that Mr. Fields briefly resisted when the officers attempted to place him in handcuffs. Mr. Fields says he was not moving at this specific time and trying to be still.

Officer Hall and Sergeant Frye watched from outside the padded cell as the incident began. At one point, Officer Hall walked away and sat on a bench. Sergeant Frye watched the incident in its entirety and walked into the padded cell when the TASER was deployed.

STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[2] Of these four officers, only Officer Rozzi is a defendant in this case.

3

P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could find in its favor to prevent summary judgment. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must deny the motion when there is admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

The court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must construe all facts in a light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A document filed *pro se* is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

Mr. Fields alleges violations of his constitutional rights under 42 U.S.C. § 1983. Section 1983 serves as a procedural vehicle for lawsuits "vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To establish a § 1983 claim, Mr. Fields must show that he was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

He advances Fourth Amendment excessive force and failure to intervene claims against Officer Rozzi, Officer Hall, and Sergeant Frye. Use of force against a suspect is a seizure subject to the reasonableness requirement of the Fourth Amendment. *Smith v. Finkley*, 10 F.4th 725, 736 (7th Cir. 2021). When determining the reasonableness of force, the court considers the circumstances, including the severity of the crime, the immediate threat the suspect posed to the safety of officers and others, and if the suspect actively resisted or attempted to evade arrest by flight. *Graham*, 490 U.S.

4

at 396. In addition, the court considers "whether the individual was under arrest or suspected of committing a crime; whether the individual was armed; and whether the person was interfering or attempting to interfere with the officer's duties." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015).

The analysis requires an inquiry into "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (quotations omitted). Courts must examine the reasonableness of the actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* An officer acts reasonably when deploying force if he "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-397. Ultimately, the fundamental question is "whether the totality of the circumstances justified a particular sort of . . . seizure." *Garner*, 471 U.S. at 8-9.

"Though legally distinct, the fate of [a] failure to intervene claim is closely linked to that of [an] excessive force claim since, by definition, if there was no excessive force then there can be no failure to intervene." *Abdullahi v. City of Madison*, 423 F.3d 763, 767-68 (7th Cir. 2005). "[A]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know [] that excessive force was being used . . . or that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *see Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). A realistic opportunity to intervene may exist whenever an officer could have "called for a

5

backup, called for help, or least cautioned [the officer] to stop." *Yang*, 37 F.3d at 285. This claim often raises genuine disputes of material fact. *Abdullahi*, 423 F.3d at 774.

The defense also asserts qualified immunity. The defense of qualified immunity "shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Marshall v. Allen*, 984 F.2d 787, 791 (7th Cir. 1993). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). If no constitutional right was violated, there is no need for further inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, if a violation could be made, the next step is to ask whether the right was clearly established; this inquiry must be undertaken in light of the particular circumstances of the case. *Id.* "A constitutional right is 'clearly established' for qualified-immunity purposes where [t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 726 (7th Cir. 2013). "A case holding that the exact action in question is unlawful is not necessary." *Alicea v. Thomas*, 815 F.3d 283, 291 (7th Cir. 2016).

A.   *Force Used at the Scene of Arrest.*

Mr. Fields alleges that Officer Rozzi and Officer Hall used excessive force at the scene of arrest in violation of the Fourth Amendment when Officer Rozzi took Mr. Fields to the ground and Officer Hall put his knee on Mr. Fields' back. Mr. Fields seems to back off this claim against Officers Rozzi and Hall in his summary judgment response but still calls it excessive force. As a *pro se* litigant, the court will still address this claim. *See Erickson*, 551 U.S. at 94.

Officer Rozzi has one view. He declares that Mr. Fields was resisting arrest and jerked away while being escorted to his patrol vehicle. Officer Rozzi says this caused him to pull Mr. Fields to the ground to regain control. Officer Hall says he was 50 yards away and heard a short struggle but only

6

witnessed both individuals on the ground. Mr. Fields has another view. Mr. Fields says he wasn't resisting and was just asking questions about what was happening. Mr. Fields also says Officer Hall wasn't 50 yards away but partook in the use of force by putting his knee on Mr. Fields' back.

After these events, Mr. Fields was charged with and pleaded guilty to resisting law enforcement. *See Fields v. State of Indiana*, 2022 Ind. App. Unpub. LEXIS 492, 1-2 (Ind. Ct. App. May 6, 2022). He pleaded guilty to the underlying facts of the probable cause affidavit, which described him jerking away from Officer Rozzi and saying he wasn't going anywhere.[3] Because his claim today that he did not resist law enforcement is incompatible with his conviction, his excessive force claim for the conduct at the scene of the arrest is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

"*Heck* prevents [] a person from prevailing in the § 1983 action on a position incompatible with [a] conviction." *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010). In *Evans*, 603 F.3d at 363, the plaintiff brought an excessive force claim for conduct during and after his arrest. The court rejected the idea that he did not resist as "incompatible with his conviction [for resisting law enforcement]; [and] any proceedings based on this contention must be stayed or dismissed under *Wallace* or *Heck*." *Id.* at 364. It is no different here.

A plaintiff "may choose to rest an excessive-force claim wholly on a contention that the police attacked an innocent bystander, who did not try to fend them off. Then a conviction for resisting arrest would be inconsistent with an award of damages for the arrest." *Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019). Mr. Fields asserts that he resisted custody, not that the force used was unreasonable in relation to the nature of his resistance. This cannot be resolved "without casting doubt on the validity of his conviction." *Id.* Though the propositions that "'the suspect resisted arrest' and

---

[3] A court may take judicial notice of matters of public record, including state court decisions, court filings, and documents from the state court proceedings. *J.B. Woodard*, 997 F.3d 717, 717 (7th Cir. 2021). The court takes judicial notice of Mr. Fields' state court case for resisting law enforcement and his guilty plea solely to determine whether his claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

'the police used too much force to effect the arrest' can be true at the same time," *id.*, that is not what Mr. Fields has alleged nor is that comparable with what occurred at the scene of his arrest. The momentary force used, even taking the facts as Mr. Fields alleges, would only be unreasonable if he didn't resist arrest. An award for damages for this force would be inconsistent with Mr. Fields' conviction for resisting arrest. *Heck* bars this theory of excessive force. *See Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).

      B.    *Force Used at Jail.*

Mr. Fields also claims that Officer Rozzi used excessive force at the jail and that Officer Hall and Sergeant Frye failed to intervene to prevent that force and force used by other officers. The court has the benefit of video evidence.

"Although on summary judgment [the court] generally view[s] the facts in the light most favorable to the nonmovant, in rare circumstances when video footage clearly contradicts the nonmovant's claims, [the court] may consider that video footage without favoring the nonmovant." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372, 378-81 (2007)). "Of course, videos are sometimes unclear, incomplete, and fairly open to varying interpretations," but "[w]hen video footage firmly settles a factual issue, there is no genuine dispute about it, and [the court] will not indulge stories clearly contradicted by the footage." *Id.*; *see also Dockery v. Blackburn*, 911 F.3d 458, 466, 468 (7th Cir. 2018) (plaintiff's claim that he didn't resist was "utterly discredited" by the video which clearly depicted resistance); *Gasser v. Vill. of Pleasant Prairie*, 2022 U.S. App. LEXIS 8015, 4-5 (7th Cir. Mar. 28, 2022) ("In cases where video evidence is available, as here, there are additional contours to the summary judgment methodology. '[T]o the extent [plaintiff's] story is 'blatantly contradicted' by the video such that no reasonable jury could believe it, we do not credit h[er] version of events.'") (citation omitted).

Plainly according to the video evidence, Officer Rozzi and three other officers entered the padded cell. From the record, Mr. Fields was read the search warrant and asked to stand up and put his hands behind his back. He didn't comply. Again from the video, Officer Rozzi and another officer rolled and pushed Mr. Fields to the ground to get him into a prone position. Intoxicated and thus unpredictable, at 6'5" and 230 pounds, and within confined quarters, Mr. Fields stiff-armed the ground preventing the officers from placing him on his stomach. Officer Rozzi then kneeled on Mr. Fields to enable the placement of handcuffs and ankle restraints. The defendants say Mr. Fields was resisting, and the video demonstrates that as well as the attendant risks to the officers.

It is reasonable to put someone in a prone position to prevent injury to the individual and the officers, *Padula v. Leimbach*, 656 F.3d 595, 604 (7th Cir. 2011), and the "reasonableness of kneeling on a prone individual's back during the arrest turns, at least in part, on how much force is applied. Kneeling with just enough force to prevent an individual from 'squirming' or escaping might be eminently reasonable," *Abdullahi*, 423 F.3d at 771; *see also Catlin v. City of Wheaton*, 574 F.3d 361, 367-68 (7th Cir. 2009) (tackling and kneeling on back of resisting individual was reasonable). Mr. Fields previously resisted Officer Rozzi and was doing so at the moment the force was used—actively and passively. Officer Rozzi only used this force for a short period of time and during the time Mr. Fields was resisting. For a reasonable jury, the video unquestionably confirms no objective use of unreasonable force.

Mr. Fields alleges that he thereafter was punched, kicked, and choked during this incident. He doesn't specify who did this, and the video doesn't permit a reasonable jury to credit these allegations outside of two modest knee strikes to his left leg (done by a non-party to this case) to prevent him from resisting with that leg and to bring his leg in line with his body. The video instead belies Mr. Fields' version of events. *See Horton*, 883 F.3d at 944.

After getting Mr. Fields in a prone position, the four officers in the padded cell put leg shackles on Mr. Fields and held him down as they attempted to wrestle his arms around to handcuff him. From the video, Mr. Fields continued to resist. Even shackled, he endeavored to move his left leg in a position to give him additional leverage, and he continued to have his arms and hands to the side (above his waist) as he resisted. Mr. Fields says he was not moving during this time and trying to be still, but the video plainly shows otherwise. Still noncompliant and resisting, one officer deployed a TASER device to his lower back or upper buttocks. The video shows this was a drive-stun application only—designed in this mode for pain compliance not incapacitation—and the video shows Mr. Fields promptly gave up his left arm and hand but still resisted with his right arm and leg as he leveraged to his left side. No reasonable jury could find that officers used excessive force, either in their maneuvers or in the TASER application, based on the undisputed evidence of the video. *See Forrest v. Prine*, 620 F.3d 739, 745-46 (7th Cir. 2010) (summary judgment affirmed for officer who used a TASER device on a larger and intoxicated man, in a small area, who was noncompliant, yelling, and clenching fists). The officers thereafter aided Mr. Fields up and brought him to his feet to exit the room.

The defendants focus heavily on his conduct before and after—shouting, resisting, and being disruptive before and stepping toward Officer Rozzi after—but other than mere context to frame the basis of the officers' knowledge of an intoxicated and unruly suspect, conduct neither before nor after directs the result today. The "prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior—including resisting arrest, threatening officer safety, or potentially carrying a weapon." *Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014); *see also Strand v. Minchuk*, 910 F.3d 909, 911-12 (7th Cir. 2018). And the conduct after doesn't speak to the totality of the circumstances facing the officers when they exercised force in the cell. *See Graham*, 490 U.S. at 397. The record shaped plainly by the video demonstrates that no reasonable jury could conclude that Officer Rozzi's use of force or the TASER application was objectively unreasonable. No constitutional

right was violated, so Officer Rozzi is entitled to qualified immunity. *See Saucier*, 533 U.S. at 201. And without an excessive force claim, Mr. Fields has no claim for failure to intervene against the others. *See Abdullahi*, 423 F.3d at 767-68. The court grants summary judgment.

    C.    *Defamation.*

Mr. Fields alleges that Officer Rozzi, Officer Hall, and Sergeant Frye defamed him by saying that he was looking for boys and he was a child molester. The defendants say they didn't call him a pedophile. There seems to be some confusion as to what was allegedly said as Mr. Fields' complaint alleges they called him a "pedophile as well as any other names." Nevertheless, a procedural issue under the Indiana Tort Claims Act (ITCA) decides the fate of Mr. Fields' defamation claim.

Under the ITCA, a claim against a political subdivision must be filed with the governing body of that political subdivision within 180 days after the loss occurs. Ind. Code § 34-13-3-8(a)(1). This notice requirement applies when only a political subdivision's employees are sued, as here. *Poole v. Clase*, 476 N.E.2d 828, 830-31 (Ind. 1985). Compliance with the notice requirement is a procedural question that need not be pleaded but may be raised as a defense in a responsive pleading. *City of Indianapolis v. Satz*, 377 N.E.2d 623, 625 (Ind. 1978). Once raised, the plaintiff has the burden of proving compliance. *Id.* Compliance with the notice requirement must be resolved by the court prior to trial. *Madden v. Erie Ins. Grp.*, 634 N.E.2d 791, 793 (Ind. Ct. App. 1994).

The court and the defendants have gone round and round with Mr. Fields to ensure ITCA notice compliance.[4] Today, the defendants move for summary judgment because he has yet to produce

---

[4] On August 31, 2020, the court dismissed Mr. Fields' complaint but granted him leave to plead compliance with the ITCA notice requirement in an amended complaint [ECF 36]. On January 21, 2021, the court denied his amendment of his defamation claim unless he established compliance with the ITCA. On February 10, 2021, Mr. Fields filed an amended complaint claiming that he sent the notice but didn't make a copy because he was incarcerated. On May 18, 2021, he filed another amended complaint. The defendants moved to dismiss his defamation claim for failure to comply with the ITCA notice requirement. Mr. Fields responded that he didn't know that a tort claim notice was necessary [ECF 88]. He again said he sent a grievance form to the defendants but didn't make a copy due to his incarceration [*id.*]. On December 3, 2021, the court denied the motion to dismiss with leave to refile because of Mr. Fields' bankruptcy proceeding [ECF 135].

11

his notice. Mr. Fields responds by arguing that his notice period is tolled because he was "incapacitated" due to his incarceration under Ind. Code 34-13-3-9. "If a person is incapacitated and cannot give notice as required in section 6 or 8 [IC 34-13-3-6 or IC 34-13-3-8] of this chapter, the person's claim is barred unless notice is filed within one hundred eighty (180) days after the incapacity is removed." Ind. Code 34-13-3-9. An individual is incapacitated under pertinent Indiana law if he is unable "to manage in whole or in part the individual's property" or "to provide self-care" because of "incarceration, confinement, detention, . . . or other incapacity."[5]

His argument falls short. Mr. Fields only refers to his present incarceration and alleged incapacitation. But the alleged defamation occurred on February 1, 2018, so Mr. Fields was required to file his notice on or before July 31, 2018. *See* Ind. Code § 34-13-3-8. When he filed his complaint on February 6, 2020, he listed a residential address. When he filed his motion to proceed *in forma pauperis* on March 2, 2020, he disclosed he was just recently incarcerated. Mr. Fields hasn't explained how any incarceration rendered him incapacitated from February 1, 2018 to July 31, 2018 or even until he filed his complaint in early 2020. Accordingly, the court grants summary judgment on his defamation claim for failure to comply with the notice requirement under the ITCA.

D. *Evidentiary Dispute.*

In a separate motion, Mr. Fields objects to, and seemingly seeks to strike from the summary judgment record, the defendants' toxicology report showing Mr. Fields' ethanol content in his blood sample. Mr. Fields objects because he said he was never given this report during discovery. The court's local rules are quite clear that disputes about the admissibility or materiality of evidence must be raised in the parties' briefs and separate motion to strike must not be filed. N.D. L.R. 56-1(f). Even *pro se* litigants must follow local rules. *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009). Accordingly, the

---

[5] Although this statute defines "incapacitated" in the context of probate and guardianship proceedings, Indiana cases apply this definition to the ITCA. *See, e.g., Fox v. Rice*, 936 N.E.2d 316, 323 n.4 (Ind. Ct. App. 2010).

court denies Mr. Fields motion for noncompliance with local rule [ECF 205]. Even still, the court didn't rely on the toxicology report in today's decision, so there is no prejudice.

## CONCLUSION

Accordingly, the court GRANTS the summary judgment motion [ECF 191] and DENIES the motion to strike the toxicology report [ECF 205]. This order terminates the case.

SO ORDERED.

July 12, 2023                        *s/ Damon R. Leichty*
                                                     Judge, United States District Court